UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DWINA M. DOMME,<br><br>        Plaintiff,<br><br>    vs.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>        Defendant. | No. CV-05-0119-AAM<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, INTER ALIA** |

**BEFORE THE COURT** are plaintiff's motion for summary judgment (Ct. Rec. 11) and the defendant's motion for summary judgment (Ct. Rec. 15).

## JURISDICTION

Dwina M. Domme, plaintiff, applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). The applications were denied initially and on reconsideration. After timely requesting a hearing, plaintiff, represented by counsel, appeared and testified before Administrative Law Judge ("ALJ") Richard Hines on September 24, 2003. Medical expert Arthur B.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT-     1**

Craig, M.D., testified at this hearing.  A supplemental hearing was held on March 24, 2004.  Vocational expert, Daniel R. McKinney, testified at this hearing.  On May 14, 2004, the ALJ issued a decision denying benefits.  The Appeals Council denied a request for review and the ALJ's decision became the final decision of the Commissioner.  This decision is appealable to district court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the plaintiff's and defendant's briefs, and will only be summarized here. At the time of the hearing, plaintiff was 49 years old.  She has a high school education and completed two years of college.  She served four years in the U.S. Army as a clinical technician and has past relevant work experience as a certified nurse's aide, finishing solderer, and floral designer.  Plaintiff alleges disability since May 19, 1999 due to attention deficit hyperactivity disorder (ADHD), anxiety, surgeries and shoulder and knee injuries.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).  "[S]uch inferences and conclusions as the

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-        2**

1  [Commissioner] may reasonably draw from the evidence" will also be upheld.
2  Beane v. Richardson, 457 F.2d 758, 759 (9th Cir. 1972); Mark v. Celebrezze, 348
3  F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a
4  whole, not just the evidence supporting the decision of the Commissioner.
5  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989), quoting Kornock v. Harris,
6  648 F.2d 525, 526 (9th Cir. 1980); Thompson v. Schweiker, 665 F.2d 936, 939
7  (9th Cir. 1982).
8      It is the role of the trier of fact, not this court to resolve conflicts in evidence.
9  Richardson, 402 U.S. at 400.  If evidence supports more than one rational
10 interpretation, the court must uphold the decision of the ALJ.  Allen v. Heckler,
11 749 F.2d 577, 579 (9th Cir. 1984).
12     A decision supported by substantial evidence will still be set aside if the
13 proper legal standards were not applied in weighing the evidence and making the
14 decision.  Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433
15 (9th Cir. 1987).
16
17                              **ISSUES**
18     Plaintiff argues the ALJ erred in finding that plaintiff does not have "severe"
19 mental impairments.  Plaintiff also argues the ALJ erred in finding the plaintiff
20 lacks credibility, and erred in his determination of the plaintiff's residual functional
21 capacity (RFC).
22
23                            **DISCUSSION**
24 **SEQUENTIAL EVALUATION PROCESS**
25     The Social Security Act defines "disability" as the "inability to engage in
26 any substantial gainful activity by reason of any medically determinable physical
27 or mental impairment which can be expected to result in death or which has lasted
28

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-      3**

or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

      The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520 and 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987).  Step one determines if she is engaged in substantial gainful activities.  If she is, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i).  If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).  If the claimant cannot perform this work, the fifth and final step in the process

**ORDER GRANTING DEFENDANT'S  
MOTION FOR SUMMARY JUDGMENT-          4**

determines whether she is able to perform other work in the national economy in view of her age, education and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found that plaintiff had "severe" physical impairments, including osteoarthritis; history of migraine headaches; status post bilateral shoulder surgeries; bilateral carpal tunnel syndrome, with surgical repair; and chronic obstructive pulmonary disease.  The ALJ, however, found that plaintiff did not suffer from any "severe" mental impairments.  The ALJ found that plaintiff's "severe" physical impairments, either alone or in combination, did not meet or medically equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1.  The ALJ concluded that plaintiff had the residual functional capacity (RFC) to "perform work at the light level of exertion subject to the avoidance of work above shoulder height; avoidance of squatting, kneeling, and frequent use of stairs; avoidance of repetitive vibrations to her hands; and the avoidance of air pollution and extremes of temperature and humidity."  The ALJ concluded this RFC did not preclude plaintiff from performing her past relevant work as a floral designer and therefore, that plaintiff was not disabled.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-        5**

**SEVERITY OF MENTAL IMPAIRMENTS**

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. §§ 404.1508 and 416.908.

Step two is a de minimis inquiry designed to weed out nonmeritorious claims at an early stage in the sequential evaluation process. Bowen, 482 U.S. at 148. See also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996), citing Bowen, 482 U.S. at 153-54 ("[S]tep two inquiry is a de minimis screening device to dispose of groundless claims"). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two. Bowen, 482 U.S. at 158. "Basic work activities" are the abilities and aptitudes to do most jobs, including: 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) and 416.921(b).

While acknowledging that plaintiff had been diagnosed with generalized anxiety disorder, the ALJ concluded it was not a "severe" mental impairment because it imposed no more than minimal limitations on plaintiff's ability to perform work-related activities and/or had not lasted in severity for any continuous 12 month period. (Tr. at p. 25).

In April 2000, plaintiff underwent a psychiatric evaluation in conjunction

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-       6**

with her Labor and Industries claim.  This evaluation was performed by Robert Baxtley, M.D.  Dr. Baxtley diagnosed "[g]eneralized anxiety disorder, not directly related to the industrial injury, however there may have been some mild to moderate increase in her anxiety symptoms since this industrial injury related to her inability to work **and to distract herself by working on a regular basis**."  (Tr. at p. 174)(emphasis added).  Dr. Baxtley assigned plaintiff a Global Assessment of Functioning (GAF) Score of 60.  A score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, (4th ed. Text Revision 2000)(DSM-IV-TR).  Dr. Baxtley added:

> She is considered fully employable from [a] psychiatric perspective at this point.  In fact, if she were able to undergo another surgery and retain functioning of her arm and shoulder, this woman would clearly do better if she were able to return to the work setting.
>
> I would encourage all parties involved to provide whatever treatment is necessary for this woman to return to the work force.

(Tr. at p. 175).

In a Washington Department of Social and Health Services (DSHS) form dated October 13, 2000, Donald Crawford, M.S., at Behavioral Assessments & Counseling, also diagnosed generalized anxiety disorder and indicated that while this did not limit the plaintiff in any cognitive fashion, it did markedly limit her ability to relate appropriately to co-workers and supervisors and her ability to respond appropriately and tolerate the pressures and expectations of a normal work setting, as well as moderately limit her ability to interact appropriately in public contacts. (Tr. at 196-97).  Mr. Crawford indicated that these limitations would last a maximum of 6 months and a minimum of 3 months, and that plaintiff would benefit from a structured psychotherapy program for anxiety.  (Tr. at p. 198).

In March 2001, Frank Rosenkrans, Ph.D., a psychologist at Behavioral Assessments & Counseling, completed a DSHS form repeating the generalized

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT-         7**

anxiety disorder diagnosis and the limitations opined by Mr. Crawford in the October 2001 form. (Tr. at pp. 209-210). Dr. Rosenkrans stated that plaintiff was "intelligent, young, not physically disabled, and should be able to return to work." He also indicated that plaintiff's functional limitations should last a maximum of 6 months and a minimum of 6 months. (Tr. at p. 211). In September 2001, Dr. Rosenkrans completed another form which was identical in all respects to the March 2001 form, with the exception that he increased the severity of plaintiff's limitation in her ability to interact appropriately in public contacts from "moderate" to "marked." (Tr. at pp. 228-31). In a separate report, he indicated the plaintiff "should be able to be back in work in six months." (Tr. at p. 233).

In October 2001, plaintiff underwent a psychiatric evaluation by David G. Grubb, M.D., in connection with her Labor and Industries claim. Dr. Grubb diagnosed a "longstanding" anxiety disorder, unrelated to plaintiff's industrial injury. He indicated plaintiff's GAF within the past year was "65 to 75 with medication" and that plaintiff was not in need of any psychiatric treatment. (Tr. at p. 240). A GAF score of 61-70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well and having some meaningful interpersonal relationships. A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psychosocial stressors and that there is no more than a slight impairment in social, occupational or school functioning.

In October 2003, plaintiff was psychologically evaluated by John B. Severinghaus, Ph.D. He diagnosed the plaintiff with Mood Disorder NOS (not otherwise specified) and Anxiety Disorder NOS with current anxiety attacks and possible panic attacks. He indicated that "[p]sychologically, [plaintiff] appears to be doing fairly well on her medication regimen and occasional counseling sessions[,]" and "I would agree with previous examiners that from a psychiatric

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-        8**

standpoint she appears to have mild to moderate problems that are not severe enough to preclude employment." (Tr. at p. 454). He assigned the plaintiff a GAF score of 55 (moderate symptoms; moderate difficulty in social, occupational or school functioning), stating "occasional panic/anxiety attacks . . . continuous mild agitation, but has good work history despite." (Tr. at p. 456). Dr. Severinghaus checked boxes on a "Medical Source Statement Of Ability To Do Work-Related Activities" form indicating plaintiff was "moderately" limited in the following areas: perform activities within a schedule, maintain regular attendance, and be punctual; complete a normal workday or workweek; perform at a consistent pace; interact appropriately with the public; get along with co-workers and peers; maintain socially appropriate behavior; and respond appropriately to changes in the work setting. (Tr. at pp. 457-58).

In December 2003, James E. Bailey, Ph.D., completed a DSHS form in which he indicated that plaintiff's diagnoses included "attention deficit/hyperactivity disorder, combined by history," "anxiety, NOS," and "dysthymic disorder." He indicated plaintiff was moderately limited in her abilities to exercise judgment and make decisions, perform routine tasks, relate appropriately to co-workers and supervisors, interact appropriately in public contacts, and respond appropriately to and tolerate the expectations of a normal work setting. (Tr. at pp. 468-69). He also opined these limitations would last a minimum of 1 year and for an indefinite maximum period. (Tr. at p. 470). In a separate report, Dr. Bailey stated that plaintiff's current GAF and highest GAF in the past year was 55. According to the doctor:

> She shows moderate symptoms. She does have some meaningful relationships and activities. In terms of her ability to handle funds, she knows the amount and source of her income, she should be able to handle her funds in her own best interest. Her prognosis is fair. I did suggest adding counseling, related to her losses, at the Outreach Center, sponsored by the VA. Her attention has improved with medication, by my observation.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-      9**

> Her activities seem mostly independent. Socially, she would be limited in dealing with large groups of the public. In terms of concentration and persistence, she should be able to do some multi-step tasks. Her persistence is likely reduced by her anxiety and panic. In terms of decompensation, there is no evidence of decompensation in the past 12 months.

(Tr. at pp. 474-75).

In February 2004, Michael Tyler, M.D., performed a psychiatric assessment of the plaintiff. He diagnosed the plaintiff with "Major Depressive Disorder, recurrent, mild," "Panic Disorder, without Agoraphobia," and "PTSD" (post-traumatic stress disorder). He indicated the plaintiff had "[d]ifficulty with social environment" and assigned her a GAF score of 51. (Tr. at p. 478).

At the supplemental administrative hearing, plaintiff's counsel asked the vocational expert to assume the plaintiff had the "moderate" limitations opined by Dr. Severinghaus. It was the vocational expert's opinion that "a person with these limitations would probably be able to obtain work but wouldn't be able to maintain employment over time." (Tr. at p. 588-89). The "Medical Source Statement Of Ability To Do Work-Related Activities" completed by Dr. Severinghaus defines "moderate" as "moderate limitation in this area, but the individual is still able to function satisfactorily." A "slight" limitation is defined as a "mild" limitation in an area, but the individual can generally function well. These definitions appear consistent with the definitions set forth on the DSHS form. Per the DSHS form, a "mild" limitation is one which does not significantly interfere with basic work-related activities. A "moderate" limitation is one which significantly interferes with basic work-related activities. (Tr. at p. 228).[1] Per Social Security regulations,

---

[1] Likewise, the "marked" rating under Social Security regulations corresponds with the "marked" rating used by DSHS, and the "extreme" rating under Social Security regulations corresponds with the "severe" rating used by DSHS. Social

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-      10**

a rating of "none" or "mild" in activities of daily living, social functioning, and concentration, persistence, or pace, combined with there being no episodes of decompensation, will generally result in a conclusion that a mental impairment is not "severe," unless the evidence otherwise indicates there is more than a minimal limitation in ability to do basic work-related activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Generally then, anything more than a "mild" limitation suggests a mental impairment is "severe."

    Obviously, a number of the physicians who examined the plaintiff, including Dr. Severinghaus, indicated that plaintiff had more than a "mild" limitation in certain areas of functioning due to her mental impairments. Nevertheless, the court is compelled to find that substantial evidence supports the ALJ's determination that plaintiff did not have any "severe" mental impairments.

It is not clear that any of the psychologists or psychiatrists who saw the plaintiff can be considered a "treating" source whose uncontradicted opinion could be rejected only for clear and convincing reasons, and whose contradicted opinion, could be rejected only for specific and legitimate reasons. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)(citations omitted). All of the psychologists and psychiatrists appear to fall in the category of "examining" physicians and therefore, their opinions start out on equal footing. One of those "examining" physicians, Dr. Grubb, opined that plaintiff had no more than "mild" limitations arising from her mental impairments. And while Dr. Severinghaus did check boxes indicating moderate limitations in a number of different areas, he stated in his narrative report that he agreed with previous examiners, such as Dr. Grubb and Dr. Baxtley, that

---

Security uses a five point scale for rating functional limitations: none, mild, moderate, marked and extreme. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4).

DSHS also uses a five point scale: none, mild, moderate, marked and severe.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-      11**

from a "psychiatric standpoint," plaintiff "appears to have mild to moderate problems that are not severe enough to preclude employment." Not only that, Dr. Severinghaus observed that plaintiff had a "good work history" despite her "continuous mild agitation." Indeed, the record indicates that as early as 1992, the plaintiff began experiencing anxiety symptoms for which she commenced taking medication (BuSpar) and which she continues to take through the present time. (Tr. at pp. 173 and 236). Despite this, plaintiff appears to have worked fairly steadily, including her employment as a floral designer, until her industrial injury in 1999 when she was working as a nurse's aide. (Tr. at pp. 86-87; 108). Accordingly, there is "substantial evidence" in the record supporting the ALJ's conclusion that plaintiff did not have a "severe" mental impairment.

**PHYSICAL RFC**

Plaintiff contends the ALJ erred in finding that she had the capacity for "light" exertion.[2] According to plaintiff, the ALJ improperly rejected the opinion of her treating physician, Roger N. Cooke, M.D., that plaintiff was limited to "sedentary" work.[3] In December 2003, Dr. Cooke, a neurologist, completed a

---

[2] "Light" exertion means lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. It also involves a good deal of walking or standing, or involves sitting most of the time with pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b) and 416.967(b).

[3] "Sedentary" exertion involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. It primarily involves sitting, although a certain amount of standing and walking is

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-        12**

DSHS "Physical Evaluation" form indicating plaintiff's neurological problem was "headaches," and that this was a "marked" impairment which very significantly interfered with her ability to perform one or more basic work-related activities. Dr. Cooke indicated that to improve plaintiff's employability, he recommended a trial of different prophylactic drugs for her headaches. Dr. Cooke did not list any impairments, other than headaches. (Tr. at pp. 459-66). There is no indication theses headaches caused exertional limitations as opposed to non-exertional limitations. Therefore, nothing said by Dr. Cooke contradicts the ALJ's conclusion that plaintiff was capable of "light" exertion. Indeed, the ALJ found that one of plaintiff's "severe" physical impairments was a history of migraine headaches.

      The ALJ's RFC determination was based on exertional and non-exertional limitations opined by Dr. Craig at the September 2003 administrative hearing. (Tr. at pp. 551-52). The conclusion of a non-examining physician, such as Dr. Craig, does not constitute substantial evidence by itself. See <u>Erickson v. Shalala</u>, 9 F.3d 813, 814 at n. 7 (9th Cir. 1993), and <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990)("The non-examining physician's conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions and conclusions of an examining physician"). In <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995), the Ninth Circuit emphasized, however, that the reports of a non-examining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with the other evidence. Other than Dr. Cooke's indication that plaintiff was limited to "sedentary" work, which has been discounted for the reasons set forth above, plaintiff does not point to anything else in the medical

---

often necessary in carrying out job duties. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-        13**

record which is inconsistent with the exertional and non-exertional physical limitations opined by Dr. Craig.

The ALJ found the plaintiff's allegations regarding her physical limitations were not entirely credible. The ALJ may not reject a claimant's statements about his limitations merely because they are not supported by objective evidence, nor solely on the basis of the ALJ's own observations of the claimant at the hearing. Tonapeytan v. Halter, 242 F.3d 1144, 1147-48 (9th Cir. 2001). "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony." Id. at 1148. See also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)(following factors may be considered: 1) claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between his testimony and his conduct ; 3) the claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition). An ALJ may not reject a claimant's testimony without offering clear and convincing reasons for rejecting the claimant's subjective statements. Smolen, 80 F.3d at 1281-82.

The ALJ noted that plaintiff reported to Dr. Rosenkrans in September 2001 that "[s]he has no problems with activities of daily living" and that "[s]he can cook, clean, shop, and take care of all her personal needs." (Tr. at p. 232). Moreover, plaintiff reported the following to Dr. Severinghaus in October 2003:

> Dwina says on a typical day she will do things in the yard, such as raking pine needles. She says she can't work for a long period of time. Her arms and back hurt. She says she can do basic chores and cleaning. . . . She says she works out and tries to stay in shape. She uses exercise equipment, walks about 30 minutes and does upper body exercises. She says she can't do lower body exercises because of the arthritis in her knees. She says she can no longer run because of bone spurs behind her kneecaps. She can no longer ride a mountain bike

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-        14**

>because of her shoulders. She says she used to love riding mountain bikes. She says her hobbies include making jewelry and doing beadwork. She has trouble doing beading because of her hand problems now. **I note she describes few serious limitations in overall activities and does not display depression or frustration at the limitations she does experience. Her overall description of her history and current activities suggests she has always been a quite active and involved individual.**

(Tr. at p. 452)(emphasis added).

The "Activities Of Daily Living And Socialization" form which plaintiff completed in January 2002 is consistent with what she reported to Drs. Rosenkrans and Severinghaus. In that form, plaintiff indicated she prepared meals, swept and vacuumed, shopped for groceries and clothes, made jewelry, made floral arrangements, exercised two to three times a week[4], rode her mountain bike when she could in the summer, and went to the movies once a week. (Tr. at pp. 93-94).

The ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for discounting plaintiff's credibility. Furthermore, what the plaintiff reported as her activities to her doctors and to the Social Security Administration indicated a capacity for light exertion as found by the ALJ, and that her non-exertional limitations, including those arising from her migraine headaches, were not disabling.[5]

## CONCLUSION

---

[4] Plaintiff informed Dr. Cooke in July 2003 that she was still lifting weights three times a week. (Tr. at p. 369).

[5] The medical record indicates plaintiff had experienced headaches since 1975. (Tr. at p. 367). Those headaches, however, did not preclude plaintiff from employment between 1975 and 1999.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT-    15**

Substantial evidence in the record supports the ALJ's finding that plaintiff did not suffer from a "severe" mental impairment, and his finding regarding plaintiff's residual functional capacity. Based on that residual functional capacity, the vocational expert testified that plaintiff was capable of performing her past relevant work as a floral designer, as that job is generally performed in the national economy. (Tr. at pp. 586-87). Accordingly, the ALJ properly found that the plaintiff was not disabled at anytime between May 1999 and the date of his decision.

Defendant's motion for summary judgment (Ct. Rec. 15) is **GRANTED** and plaintiff's motion for summary judgment (Ct. Rec. 11) is **DENIED**. The Commissioner's decision denying benefits is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel.

**DATED** this  27th  of March, 2006.

  s/ Alan A. McDonald  
ALAN A. McDONALD  
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT-    16**